## BEERS v. FEDERAL SECURITY ADMINISTRATOR et al.

### No. 113, Docket 21159.

United States Court of Appeals
Second Circuit.

Jan. 27, 1949.

Beers & Beers and J. J. Henry Muller, 3d, all of New Haven, Conn., for plaintiff.

H. Graham Morison, Asst. Atty. Gen., and Adrian W. Maher, U. S. Atty., and Edward J. Lonergan, Asst. U. S. Atty, both of Hartford, Conn. (Edward H. Hickey, Sp. Asst. to Atty. Gen., and Richard E. Guggenheim and Joseph B. McGrath, Attys., Department of Justice, and Leonard B. Zeisler, Atty., Federal Security Agency, all of Washington, D. C., of counsel), for defendants.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges

SWAN, Circuit Judge.

By this action the administrator of the estate of Frederick C. Perkins, deceased, sought to recover the amount of ten checks representing primary insurance benefits payable to the decedent under the Social Security Act. 42 U.S.C.A. § 401 et seq. The action was brought against the Federal Security Administrator under § 405(g) of Title 42, or, in the alternative against the United States under § 41(20) [now § 1346] of Title 28. Judgment went against the United States in the sum of $230.70. Both the defendants and the plaintiff have appealed, the purpose of the plaintiff's appeal being merely to preserve his rights against the Federal Security Administrator in case the judgment against the United States should be reversed.

The facts are not in dispute. Frederick C. Perkins, of Waterbury, Connecticut, died intestate on March 29, 1946. He had previously been certified by the Federal Security Administrator, pursuant to 42 U.S.C.A. § 405(i), as qualified for primary insurance benefits of $23.07 per month under § 402 (a) commencing in May 1940. Thereafter United States Treasury checks were issued monthly to Perkins and were charged against the Federal Old-Age and Survivors' Insurance Trust Fund created under § 401 (a). At the time of his death he was in possession of ten such checks, unendorsed and unnegotiated, which had been issued for each month of the period from August 1944 through May 1945. These checks came into the possession of the plaintiff who had been duly appointed administrator of the decedent's estate. Because the checks had been issued more than a year before July 1, 1946, and in accordance with directions on their face,[1] the plaintiff sent them to the Secretary of the Treasury on July 26, 1946 with a request that a new check or new checks be issued and sent to him. This request was referred to the Federal Security Administration which ruled, after full administrative hearings, that Perkins' administrator was not entitled to the proceeds of the unnegotiated checks. Shortly thereafter the plaintiff brought the present action, under § 405(g), to review the administrative decision, or, in the alternative, to recover against the United States on the checks, under 28 U.S.C.A. § 41(20). Upon the foregoing facts the trial judge found as conclusions of law that the court had jurisdiction of the parties and subject matter; that the decision of the Federal Security Administration was erroneous; and that the plaintiff was entitled to recover from the United States the face amount of the checks.

We agree with each of these conclusions. Section 28 U.S.C.A. § 41(20) gives the district court jurisdiction concurrently with the court of claims, of all claims not exceeding $10,000 founded on any law of Congress. Under 31 U.S.C.A. § 725t, set out in note 1, supra, and the provisions of the Social Security Act, we think the payee of the checks had a claim against the United States founded upon a law of Congress which he could enforce by suit, if he were alive,[2] and which upon his death passed by operation of law to his administrator.

The appellants contend that the district court lacked jurisdiction to entertain the plaintiff's claim against the United States under the Tucker Act because § 405(h) confines a claimant to a review under § 405(g) of the Administrator's decision; and that

---

[1] These directions were pursuant to former 31 U.S.C.A. § 725t, 48 Stat. 1235, which provided, in part, "all checks drawn on the Treasury of the United States * * * shall be payable only until the close of the fiscal year next following the fiscal year in which such checks were issued, and the amounts of all such checks properly due and payable which have not been presented for payment within such period shall be deposited into the Treasury to the credit of a trust fund account entitled 'Outstanding Liabilities (fiscal year)' * * * the balances to the credit of the outstanding liabilities account of any fiscal year which has not been covered into the surplus fund of the Treasury shall be available to pay claims on account of any check, the amount of which has been included in any balance so covered into the surplus fund." This section was repealed as of July 1, 1947, 61 Stat. 309. Its repeal is of no relevance in this case.

[2] Cf. United States v. Hvoslef, 237 U. S. 1, 10, 35 S.Ct. 459, 59 L.Ed. 813, Ann.Cas.1916A, 286; United States v. Compagnie Générale Transatlantique, 2 Cir., 26 F.2d 195.

in any event his decision that the plaintiff is not entitled to the proceeds of the unnegotiated checks was correct because §§ 402, 404 and 407 prohibit payment of accrued benefits to the estate of a deceased beneficiary. Passing for the moment the question of jurisdiction of the plaintiff's alternative cause of action, we turn to a consideration of the administrative decision.

■ In summary the contention is that if a beneficiary dies without having received payment of all the benefits to which he was entitled during his life, the balance goes to increase payments to such designated beneficiaries as have survived him, or, if none of these exists, reverts to the Social Security Trust Fund. Concededly § 402 does not specifically provide for the situation now before the court, but § 404(a) is claimed to be determinative. This section provides:

"Sec. 404. Overpayments and underpayments.

"(a) Whenever an error has been made with respect to payments to an individual under sections 401-409 of this title (including payments made prior to January 1, 1940), proper adjustment shall be made, under regulations prescribed by the Administrator, by increasing or decreasing subsequent payments to which such individual is entitled. If such individual dies before such adjustment has been completed, adjustment shall be made by increasing or decreasing subsequent benefits payable with respect to the wages which were the basis of benefits of such deceased individual."

We are unable to see the applicability of this section. "Error * * * with respect to payments" would be a most peculiar phrase to describe failure by the payee of benefit checks to present them promptly to the Treasury for payment. Plainly the section is intended to provide for the correction of mistakes in the amount of payments to persons claiming benefits under the Act. There was no error in the checks received by Perkins for the period which they covered, nor in the Administrator's certification of him as entitled to them.

■ Nor is the argument based on § 407 persuasive. This section, entitled "Assignment," reads as follows:

"The right of any person to any future payment under sections 401-409 of this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under said sections shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

This prohibition against transfer or assignment relates to the right to "any future payment" of social security benefits; it does not, in our opinion, relate to checks issued for past installments. If it did, the payee of the check would be unable to negotiate it by endorsement, which concededly he can do. We think the section is intended to preclude a person entitled to benefits under sections 401 to 409 from transferring his right before, but not after, the Administrator has recognized it. Hence checks issued to him pursuant to certification are freely transferable by him, and on his death pass by operation of law to his executor or administrator.

■ The contention that the district court lacks jurisdiction of the plaintiff's alternative cause of action is based on § 405 (h):

"The findings and decision of the Administrator after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Administrator shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Administrator, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under sections 401-409 of this title."

In our opinion this prohibition against suit under § 41 of Title 28 refers to suit upon claims which persons entitled to benefits under sections 401 to 409 must present to the Administrator for approval. After the Administrator has approved a claim and caused a check to be issued therefor, nothing remains to be done by the Administrator. If the Secretary of the Treasury refuses payment of a check because of presentment after the close of the fiscal year next following the fiscal year in which such

check was issued, we think that the payee or, after the payee's death, his estate has a claim against the Treasury founded upon a law of Congress namely, former § 725t of Title 31 and § 401(a) of Title 42 and that § 405(h) was not intended to preclude suit upon a claim of that character. But if we are wrong in so construing § 405(h) the practical result would be no different, because then we should sustain the plaintiff's appeal and direct judgment against the Administrator.

Judgment affirmed.