Harry KOCH, Appellant,

v.

SECRETARY OF the DEPARTMENT OF HEALTH, EDUCATION AND WELFARE for the United States and Secretary of the Treasury of the United States, Appellees.

No. 78–1320.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1978.

Decided Dec. 26, 1978.

John R. Doyle, Lincoln, Neb., for appellant.

Richard J. Nolan, Asst. U. S. Atty. (argued), and Edward G. Warin, U. S. Atty., Lincoln, Neb., on brief, for appellees.

Before STEPHENSON, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellant Harry Koch appeals from the involuntary dismissal of his case for failure to show right to relief.

For reversal appellant argues that the trial court erred in finding that he failed to establish element § 562(c) of the Check Forgery Insurance Fund, 31 U.S.C. §§ 561–564. Appellant also argues that the Check Forgery Insurance Fund is not his exclusive remedy and that he is also entitled to relief because the government's failure to settle his claim violated his fifth amendment right against deprivation of property without due process of law. We affirm the district court's[1] findings that appellant failed to meet requirement § 562(c) of the Check Forgery Insurance Fund and that, under the facts of this case, resort to this statute is appellant's exclusive remedy.

In May, 1972, the Social Security Administration determined that Harry Koch was disabled as of January 1, 1970, and entitled to social security disability benefits as of 1970. On August 10, 1972, a check in amount of $4,007.60 was issued by the Treasurer of the United States payable to the order of Harry Koch. It was mailed to a Lincoln, Nebraska, address provided by appellant. Because he was in and out of hospitals and hotels during this time, Koch directed that his mail be sent to this address which was the home of Henry and Opal Koch, his brother and sister-in-law. Appellant never received or endorsed this check. Instead, it was endorsed "Harry Koch" and "Opal M. Koch" by Opal Koch without his authorization or approval. Thereafter, Opal Koch admitted to appellant that she

accidentally received and cashed a social security check payable to him but stated that it was for $1,050. She explained that she had placed the money in a safe-deposit box in Lincoln, Nebraska, and would send appellant money whenever he requested, which she did. Soon, however, appellant realized that the total of these disbursements was approximately $350 more than the $1,050 Opal Koch claimed to have received. He then inquired at the social security office in Lincoln and learned that the actual amount of the check was $4,007.60. This suit followed in which appellant sought the difference between the amount of the original check and the amount Opal Koch paid him.

In reviewing this decision we do not engage in the usual presumption in favor of the correctness of the ruling by the lower court. 5 C.J.S. *Appeal & Error* § 1559(5). Rather, because this is a directed verdict, we must view the evidence in the light most favorable to the losing party and he must be given the benefit of all legitimate inferences. Any evidence produced by the prevailing party must be disregarded.[2] *Banks v. Koehring,* 538 F.2d 176, 178 (8th Cir. 1976); *Simpson v. Skelly Oil Co.,* 371 F.2d 563, 567 (8th Cir. 1967); *Williams v. Nichols,* 266 F.2d 389, 392–93 (4th Cir. 1959). Viewing the evidence in this manner, the essential question is whether appellant has produced "substantial evidence" to warrant a verdict in his favor. *Simpson v. Skelly, supra,* 371 F.2d at 569; *Dolblestis v. United States,* 101 F.2d 900, 901 (7th Cir. 1939).

Despite the fact that we are reviewing appellant's case in this favorable light, we cannot agree that the district court erred in dismissing his claim. To recover under the Check Forgery Insurance Fund 31 U.S.C. §§ 561–564, a claimant must show

1. Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

2. Because the trial court directed a verdict for the appellee at the close of appellant's case, the government did not have the opportunity to formally present evidence. There are, how-

ever, indications in the government's brief and pleadings of the government's theory that appellant conspired with Opal Koch to defraud the government as to the check in question. It is this evidence which we must disregard.

all of the following: (a) the check was stolen without his fault; (b) the check was thereafter negotiated and paid by the Treasurer on a forged indorsement of the claimant's; (c) the claimant did not participate either directly or indirectly in the proceeds of such negotiation; and (d) reclamation from the forger subsequent to the forgery has been or may be delayed or unsuccessful. *Id.* § 562. Because the trial court found that appellant failed to prove § 562(c) and dismissed his case on this basis, no evidence was introduced as to the other factors in § 562 and they are not at issue here.

Koch admitted that his sister-in-law, Opal Koch, had no money of her own to pay him. Therefore, it is clear that the $1,400 paid to Koch came from the proceeds of the $4,007 check. The question is whether it is necessary that appellant knew, when he received these payments, that they came from the $4,007 check. Appellant alleges that because he did not know that there was a $4,007 check at the time he received the amounts from his sister-in-law, he did not "knowingly participate" in the proceeds of that check.

We do not agree with appellant that the statute limits the participation in § 562(c) to "knowing" participation. Section 562(c) does not mention a knowledge requirement. A "bad faith" element is already explicitly incorporated into § 562(a) (the check was stolen without the payee's fault), which leads one to the conclusion that had Congress intended to include a knowledge requirement, it knew how to state it clearly. The legislative history is silent as to any requirement of knowledge. 87 *Cong.Rec.* 7645; S.Rep.No. 93–743, 93rd Cong., 2d Sess., *reprinted in* [1974] U. S. Code Cong. & Admin. News 6617. And, the only court to date which has faced this question found that there is no implicit requirement of knowledge. *Duden v. United States,* 467 F.2d 924 (Ct.Cl.1972). In *Duden,* a husband forged his wife's signature to negotiate income tax refund checks totaling $36,391 which were payable to them jointly and which arrived while the parties were separated. Mr. Duden appropriated the funds to his own use but at approximately the

same time he also paid his wife support payments which exceeded the amount of the forged checks. The court held that because the wife participated in the proceeds of the checks, she was barred from recovery under § 562(c) of the Check Forgery Insurance Fund Statute. *Id.* at 930. Mrs. Duden knew that the checks had arrived and that her endorsement had been forged but she did not know the amount involved. This is the same situation in the present case because Harry Koch knew that his social security check had arrived and that his endorsement had been forged but did not know the amount of the check. In one sense, the *Duden* case is even more attenuated than the present case for finding participation in the proceeds of the stolen check because here we know Opal Koch had no assets other than the stolen check. In *Duden,* there was no evidence that the amounts received by Mrs. Duden necessarily came from the proceeds of the forged checks, rather than from other assets belonging to her husband.

■ Based upon the interpretation of § 562(c) by the Court of Claims in *Duden* and our own reading of the statute and legislative history, we find that § 562(c) does not require "knowing" participation in the proceeds, as urged by appellant. It is clear, by appellant's own admission, that he in fact participated in the proceeds of the forged check, and, therefore, he is unable to prevail under the Check Forgery Insurance Fund. The district court is affirmed on this basis.

Appellant further argues on appeal that the Check Forgery Insurance Fund is not his exclusive avenue of recovery and that he is also entitled to relief because he has been deprived of property without due process.

While reserving the question whether the Check Forgery Insurance Fund is an exclusive remedy in all cases, we find that it is, in effect, the exclusive remedy in this particular case because appellant's due process argument is without merit.

Appellant claims that he has a vested property interest in the disability benefits he should have received. It is clear that appellant has no accrued property right, the defeasance of which violated the due process clause of the Fifth Amendment. Numerous courts have consistently held that there is no vested property interest in Social Security benefits which rises to the level of a contractual obligation on the part of the government. *Richardson v. Belcher,* 404 U.S. 78, 80, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Fleming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1959); *Tuttle v. Secretary of HEW,* 504 F.2d 61, 63 (10th Cir. 1974); *Watts v. Veneman,* 155 U.S.App.D.C. 84, 476 F.2d 529, 533 (1973); *Guarino v. Celebrezze,* 336 F.2d 336, 338 (3d Cir. 1964). The Supreme Court has acknowledged, however, that there is still a sufficient property interest in social security benefits to fall within the protection against arbitrary governmental action afforded by the Due Process Clause. The Supreme Court has made clear that the test for invalidating governmental action on the ground of due process with respect to benefits of this type is strict. It said:

> Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

*Fleming v. Nestor, supra,* 363 U.S. at 611, 80 S.Ct. at 1373. The antifraud requirements for recovery of a forged check in 31 U.S.C. § 562 are not a "patently arbitrary classification utterly lacking in rational justification." Therefore we find that appellant has not been deprived of his disability benefits without due process.

For the foregoing reasons, the judgment of the district court is affirmed.[3]

---

**3.** It is apparent from the frequent references by the government that there was additional evidence as to the other elements in § 562. However, the trial court did not allow the case to continue to the point where this, and possibly other, relevant evidence could be introduced. Instead, because a defense witness was unable to testify due to illness and it was apparent there would be a delay, the court granted the government's motion for a directed verdict. We note in passing that it would have made for a clearer record if the trial court had continued the case until all witnesses were available and allowed the parties to introduce all pertinent evidence.